184 So.2d 811

**GENERAL MOTORS CORPORATION**

**v.**

**Edd EARNEST.**

**6 Div. 228.**

Supreme Court of Alabama.

March 31, 1966.

Jas. C. Barton, Russell Carter, Jr., and Deramus & Johnston, Birmingham, for appellant.

T. K. Selman and Hugh Beaird, Jasper, for appellee.

SIMPSON, Justice.

This case was begun by complaint against General Motors and A.C.S. Chevrolet Company, Incorporated, a Chevrolet dealer in Jasper. The case went to the jury on three counts, one a common count for money received by the defendants to the use of the plaintiff, and two counts seeking a rescission of the contract of sale of a 1963 Chevrolet automobile, based upon breach of warranty, and seeking a refund of the amount paid on the purchase price in the amount of $1,022.88. The jury returned a verdict against defendant General Motors in this amount. The dealer escaped liability. First dealing with the count first mentioned hereinabove, clearly the verdict against General Motors cannot rest upon the common count, since it does not hold money belonging to the plaintiff.

The facts show that the plaintiff purchased a new 1963 Chevrolet automobile from A.C.S. Chevrolet Company on October 24, 1962. The bill of sale was accompanied by a "New Vehicle Warranty", which is, except for immaterial modifications not here pertinent, the standard new motor vehicle warranty devised by the Automobile Manufacturer's Association, adopted by most if not all of the major manufacturers of automobiles in this country. The warranty is as follows:

"There are no warranties, expressed or implied, made by either the Dealer or the Manufacturer on new Chevrolet motor vehicles except the Manufacturer's Warranty against defects in material and workmanship set out below:

"NEW VEHICLE WARRANTY"

"Chevrolet Motor Division of General Motors Corporation, as Manufacturer, warrants each new motor vehicle and chassis including all equipment and accessories thereon (except tires and tubes), manufactured or supplied by Chevrolet Motor Division and delivered to the original retail purchaser by an authorized Chevrolet Dealer, to be free from defects in material and workmanship under normal use and service; Chevrolet Motor Division's obligation under this warranty being limited to repairing or replacing at

its option any part or parts thereof which shall, within twenty-four (24) months after delivery of such vehicle or chassis to the original retail purchaser or before such vehicle or chassis has been driven twenty-four thousand (24,000) miles, whichever event shall first occur, be returned to an authorized Chevrolet Dealer at such Dealer's place of business and which examination shall disclose to Manufacturer's satisfaction to have been thus defective. The repair or replacement of defective parts under this warranty will be made by such Dealer without charge for parts, and if made at such Dealer's place of business, without charge for labor. * * *

"This warranty is expressly in lieu of any other warranties, expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and of any other obligations or liability on the part of the Manufacturer, and Chevrolet Motor Division neither assumes nor authorizes any other person to assume for it any other liability in connection with such motor vehicle or chassis."

Although appellant's brief contains a statement to the effect that "no recovery for breach of warranty, express or implied, will lie in the absence of privity of contract" and cites numerous cases in support of that statement, we do not find that general proposition here applicable and apparently the appellant does not deny that the warranty here runs from the manufacturer and the dealer to the initial retail purchaser, the appellee, since in brief it states specifically that:

"General Motors Corporation gives an individual purchasing a vehicle a warranty which is executed in the county where the sale is made. The owner signs an acknowledgment that he has read the warranty and that it has been explained to him. Warranty repairs are paid for by General Motors Corporation. Both General Motors Corporation and the local dealer join in the warranty."

Clearly, then, if appellant's statement be true, we have no question here involving privity as to the purchaser and the manufacturer (or the dealer) on the warranty.

The evidence is that the appellee bought this automobile on October 24, 1962. It was a new 1963 model Chevrolet. Shortly after it was purchased, the purchaser brought it in to the dealer, complaining that it vibrated badly; had a knock in the motor; it idled roughly, etc. The dealer attempted to fix it. The purchaser continued to complain about the automobile and for some ten months kept returning it to be worked on, complaining about various defects; for example, the tires on the rear wore badly because of misalignment; the grease seal came off; it used oil; the knock in the motor got worse; there was a crack in the engine block, etc. Overall the purchaser returned the car some fifteen times during the time he had it, complaining each time about one or more defects in the car. At various times the dealer put in new pistons, new rings, new inserts and main bearings, new rings and rods, and a new piston pin assembly. The testimony for the purchaser tended to show that the car was never fixed and was in the same defective condition when he returned it as when he bought it. The dealer and appellant's position is that they have lived up to their agreement and have replaced or repaired every part found to be defective and stood ready, willing and able to make further repairs at the time the car was returned for the final time and the purchaser demanded his money back. The appellee on the other hand contends that the car was defective when he bought it and that despite some fifteen different attempts the dealer has been unable to fix it and it remained in the same defective condition some ten months after he purchased it. Under these facts the appellee contends that the warranty made by the dealer and manufacturer has been breached in that the vehicle purchased by him was not free from defects in material and workmanship and that he has

a right to rescind the contract because of this breach and that under these facts it is obvious that the automobile cannot be repaired by the replacement of parts, etc., since all of the effort in this connection has been without success.

■ We can agree with the appellee's contention that at some point after the purchase of a new automobile, the same should be put in good running condition, that is, the seller does not have an unlimited time for the performance of the obligation to replace and repair parts. 46 Am.Jur., Sales, § 732; 77 C.J.S. Sales § 340. This is no more than saying that at some point in time, it must become obvious to all people that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free from defect.

■ In this case, the purchaser called upon the seller repeatedly to perform under the warranty. The seller has apparently been unable to do that; it follows that:

"An unsuccessful effort to remedy the defects renders the seller liable on his warranty; and the buyer is not bound to allow him a second opportunity, or to permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." 77 C.J.S. Sales § 340.

■ Conceding, without deciding, that there was evidence from which the jury could have found that the express warranty had been breached, we turn to the buyer's remedy in such case. Unquestionably he might have had a case for damages, if proven, against General Motors Corporation for breach of warranty. He similarly had a cause of action for breach of warranty against the dealer. He did not pursue these remedies, however, but elected to rescind the sale under the provisions of Title 57, § 75, Code of 1940, recompiled 1958. In so doing, he has mistaken his remedy as to the manufacturer. In this connection it should be noted that A.S.C. Chevrolet Company is an independent dealer which was operating under a dealer franchise agreement with General Motors, and expressly was not the agent of General Motors in making the sale. All of the evidence is expressly to the effect that the sale was made by the dealer, acting independently, and not as the agent of the manufacturer. The statute cited above (which is a part of the Uniform Sales Act as it exists in this state) unquestionably gives the buyer of goods the express right to rescind the contract of sale as to the seller and to demand the return of the purchase price. However, the word "seller" is defined in that Act, Title 57, § 1, to mean "a person who sells or agrees to sell goods, or any legal successor in the interest of such person". We think it obvious that the Uniform Sales Act (Title 57, § 1 et seq.) does not purport to afford a purchaser a remedy on a breach of warranty except as against the seller, or his successor in interest. This is a category into which General Motors will not fit in this case.

In reviewing the Uniform Sales Act and cases construing that act in jurisdictions in which it is the law, we are unable to find any convincing argument to the effect that the act was ever intended or attempts to define the rights and remedies of a purchaser as to a remote manufacturer, not his immediate vendor. This does not mean that the purchaser is left without a remedy as to the manufacturer for breach of an express, and perhaps an implied warranty, and particularly where there exists no question as to privity insofar as the warranty is concerned. However, we do not believe his remedy is defined by this act. The right of a purchaser to rescind as provided in that act is limited to the "seller or his successors in interest".

Had the jury in this case returned a verdict against both the seller of this automobile and the manufacturer, a different case would have been presented. But, the verdict returned absolved the dealer from liability. It is perhaps not necessary to note that in returning this verdict the jury seems to have reached an inconsistent conclusion

in that the liability of both the dealer and the manufacturer was to be determined by the question of whether there had been a breach of warranty, i. e. was the car defective at the time it was sold. They seemed to have answered this inquiry in the negative as to the seller, but in the affirmative as to the manufacturer. It seems that the liability of each depended upon the exact same issue.

Under the pleadings as framed the verdict against General Motors cannot be sustained. We are aware that this question has been decided by only a few jurisdictions. However, the conclusion reached is consistent with the majority. Kyker v. General Motors Corporation, 214 Tenn. 521, 381 S.W. 2d 884 (1964); 9 De Paul L. Rev. 236 (1960).

Reversed and rendered.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.